IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL MERNER and MERNER LAND COMPANY, a California Corporation,<br><br>         Plaintiffs,<br><br>   v.<br><br>PETER W. MERNER,<br><br>         Defendant.<br>_____/ | No. C 02-2336 CW<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT AND TO VACATE DATES RELATED TO SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE TO REFILING |

Plaintiffs Carl Merner (Carl) and the Merner Land Company (MLC) move for leave to file a First Amended Complaint (FAC) and to vacate the pending dates related to Defendant's motion for summary judgment. Defendant Peter Merner (Peter) opposes the motion. This matter was taken under submission on the papers. Having considered all of the papers filed by the parties, the Court GRANTS Plaintiffs' motion for leave to file an amended complaint and to vacate the pending dates related to Defendant's motion for summary judgment (Docket No. 86) and DENIES Defendant's motion for summary judgment without prejudice to refiling (Docket No. 92).

BACKGROUND

As stated in the Court's earlier orders on this case, Carl and Peter are the only two shareholders in MLC, a California corporation. Carl owns 98.9% of the shares of stock in MLC and Peter owns 1.1%. Pursuant to the consent of both Carl and Peter, the corporation elected Subchapter S tax treatment. The corporation would lose its Subchapter S status if any of its shares were sold to a corporation.

Carl claims that he offered to purchase Peter's shares for fair market value as determined by a neutral third party or for $115,000. Peter did not accept this offer. Instead Peter accepted an offer from Catamount Corporation to purchase his shares for $100,000, Catamount's commitment to pay all legal fees incident to the sale, "sixty-five percent of the funds received from Merner Land Company" after Catamount recoups the purchase price and its legal fees, and an equity interest in Catamount.

In October, 2001, Peter informed Carl of his intent to sell his shares to Catamount. In response, MLC's attorney informed Peter by letter that such a sale would violate Peter's fiduciary duty to the corporation and would result in legal action. On April 16, 2002, Peter nevertheless entered into a letter agreement with Catamount to sell his shares.

Carl and MLC brought this action seeking to enjoin Peter from selling his shares to Catamount or any other corporation. On May 21, 2002, the Court entered a temporary restraining order in favor of Carl and MLC, and on January 8, 2003, the Court entered a preliminary injunction in favor of Carl and MLC. The Court

2

1  reasoned that Carl and MLC had shown the requisite likelihood of
2  success on their claim that Peter's sale of MLC stock in a manner
3  that would deprive MLC of its Subchapter S tax status should be
4  permanently enjoined because such a sale would breach Peter's
5  fiduciary duty to MLC.
6      On July 3, 2003, the Court granted Plaintiffs' motion for
7  summary judgment, and enjoined Defendant from selling his shares of
8  MLC stock in a way that would cause MLC to lose its Subchapter S
9  tax status.  The Clerk entered judgment.  Peter appealed.  The
10 Ninth Circuit, in an unpublished decision, held that as a minority
11 shareholder Peter did not owe a fiduciary duty to Carl or MLC that
12 would prevent him from selling his shares in MLC to an entity that
13 would cause MLC to lose its Subchapter S tax status.  Merner v.
14 Merner, 129 Fed. Appx. 342 (9th Cir. March 18, 2005).  The Ninth
15 Circuit reversed and remanded so that the Court could consider the
16 remaining claims in Carl's complaint.  Id.
17     In its July 3, 2003 Order, the Court noted that it did not
18 address Carl's and MLC's argument that they are entitled to summary
19 judgment and injunctive relief because Peter's sale of his stock in
20 MLC to a non-qualified entity would breach his implied promise not
21 to do so and violate the covenant of good faith and fair dealing.
22 Therefore, the Court ordered the parties to file by September 30,
23 2005 a stipulated schedule for briefing on those points.  After the
24 parties attempted to settle the case and several stipulated
25 extensions of time, the Court ordered that Plaintiffs file by
26 December 29, 2006 their motion for summary judgment and injunctive
27 relief and that Defendant file by January 29, 2007 his cross-motion
28

3

for summary judgment and any opposition to Plaintiffs' motion.

On December 21, 2006, Plaintiffs filed this motion, seeking leave to file an amended complaint and to vacate the pending dates related to Defendant's motion for summary judgment.  On December 28, 2006, Defendant filed his motion for summary judgment.

## LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) provides that leave of the court allowing a party to amend its pleading "shall be freely given when justice so requires."  Leave to amend lies within the sound discretion of the trial court, which discretion "must be guided by the underlying purpose of Rule 15--to facilitate decisions on the merits rather than on the pleadings or technicalities."  United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981).  Thus, Rule 15's policy of favoring amendments to pleadings should be applied with "extreme liberality."  Id.; see also DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987).

Four factors are relevant to whether a motion for leave to amend should be denied: undue delay, bad faith or dilatory motive, futility of amendment, and prejudice to the opposing party.  See Foman v. Davis, 371 U.S. 178, 182 (1962).  However, these factors are not of equal weight; specifically, delay alone is insufficient ground for denying leave to amend.  See Webb, 655 F.2d at 980.  Futility of amendment, by contrast, can alone justify the denial of a motion for leave to amend.  See Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995).  A proposed amendment is futile "if no set of facts can be proved under the amendment to the pleadings that would

4

constitute a valid and sufficient claim or defense." Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988). In other words, if the proposed amended complaint cannot withstand a motion to dismiss, it should be denied as futile. See id. (citing 3 J. Moore, Moore's Federal Practice § 15.08[4] (2d ed. 1974)).

## DISCUSSION

Plaintiffs argue that the Court should grant their motion for leave to amend the complaint because they recently discovered that Peter did not disclose his shares of MLC when he filed for bankruptcy in 1992. Therefore, Plaintiffs argue, the shares are still part of the bankruptcy estate under 11 U.S.C. § 554(d), and Peter did not actually own the shares when he agreed to sell them to Catamount in 2002. Further, Plaintiffs assert that any delay in bringing the motion for leave to amend stems from Defendant's refusal to answer questions about his bankruptcy case at his March, 2006 deposition.

Under 11 U.S.C. § 554(c), "any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor." However, "property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate." 11 U.S.C. § 554(d). Plaintiffs argue that Defendant's shares were not properly scheduled so they could not have been abandoned to him when the court closed the case. Therefore, Plaintiffs contend that the shares are still property of the estate and that Defendant did not have the authority to sell them.

Plaintiffs argue, "Now the primary issue is not whether or not

5

1 Peter breached a contractual or other duty to the plaintiffs in
2 selling the Shares to Catamount, but whether he had anything to
3 sell at all."  Motion at 7.  To this end, Plaintiffs have added a
4 cause of action in their proposed FAC, seeking declaratory judgment
5 that Peter does not own any shares in MLC and has nothing to sell
6 to Catamount.

7     Peter does not dispute that he failed to disclose the shares
8 in the bankruptcy proceedings.  Rather, he argues that this Court
9 lacks jurisdiction to consider whether he owned the MLC shares in
10 2002, and that Plaintiffs' claim that he delayed their motion for
11 leave to amend the complaint is unfounded.

12     Defendant argues that the United States Bankruptcy Court for
13 the Southern District of New York, where Defendant filed his 1992
14 bankruptcy petition, has exclusive jurisdiction over any property
15 that was not administered or abandoned.  Plaintiffs counter, and
16 the Court agrees, that allowing them "to amend their complaint to
17 allege Peter's lack of ownership in the share[s] does not require
18 this court to assert in rem jurisdiction over any asset of Peter's
19 prior bankruptcy estate [because t]he ultimate disposition of the
20 asset will be determined by the bankruptcy court consistent with
21 the rights of the bankruptcy estate."  Plaintiffs' Reply at 6.  The
22 Court need not exercise jurisdiction over the shares in order to
23 resolve Plaintiffs' claim for declaratory relief.  Even if the
24 Court finds that Defendant did not own the shares at the time he
25 purported to sell them, it can leave the determination of who does
26 own them to the bankruptcy court.

27     Defendant next argues that "Plaintiffs' motion is an untimely

6

attempt to avoid summary judgment." Opposition at 6. However, Plaintiffs clearly document that they acted reasonably quickly when they learned of the bankruptcy filing and that Defendant himself delayed the case by initially refusing to answer questions about the bankruptcy proceedings.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for leave to amend the complaint and to vacate the dates related to the motion for summary judgment is GRANTED (Docket No. 86). Defendant's motion for summary judgment is DENIED without prejudice to refiling according to a new briefing schedule to be set.

Plaintiffs shall file their amended complaint within one week of the date of this order. Defendant shall respond within twenty days of service. A case management conference will be held on Friday, March 30 at 1:30 p.m.

IT IS SO ORDERED.

Dated: 1/22/07

CLAUDIA WILKEN
United States District Judge

7